Filed 4/9/26  Dunbar v. Dunbar CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

|  |  |
|---|---|
| MARGARET DUNBAR, as Trustee, etc., | C098648 |
| Plaintiff and Appellant, | (Super. Ct. No. S-PR-0010606) |
| v. | |
| CHARLES DUNBAR et al., | |
| Defendants and Respondents. | |

William J. Dunbar was the settlor and original trustee of the Dunbar Revocable Trust of 2008, as Amended and Restated August 2011 (the Trust).  After his death in 2020, disputes developed between his sons, respondents Charles and Michael Dunbar, and his surviving spouse, appellant Margaret Dunbar (the sons' stepmother), over the Trust's provision of a special trustee for a small business that William had operated as a sole proprietorship.[1]  The parties filed competing petitions for instructions under Probate

---

[1] Because of the parties' shared last name, we occasionally refer to them by their first names.  No disrespect is intended.

1

Code section 17200, and a bifurcated bench trial was held to determine the proper construction of the Trust. The trial court ruled that the Trust's provisions were not ambiguous and that Charles was the designated special trustee with the power to manage all of the business's assets.

On appeal, appellant argues that the Trust's terms are ambiguous and therefore the trial court should have considered extrinsic evidence purportedly showing William's intent to designate a special trustee for the business only during his lifetime. She further contends that Charles owes her an accounting of the business's assets. Finding no merit to these contentions, we affirm.

BACKGROUND

During his lifetime, William founded and operated a sole proprietorship known as Marconi Coin and Jewelry Exchange (Marconi Coin). His son, Charles, was a longtime employee of the business. William first established a trust in February 2008, naming himself as both settlor and trustee. In August 2011, he executed an amendment and restatement of the trust after marrying appellant.

The Trust provided for the distribution of certain special gifts upon William's death. For instance, the Trust gave to appellant all of William's interest in personal effects and tangible personal property located at his residence, except for certain items specifically gifted to other individuals and except for any assets of Marconi Coin.

Section 5.3 of the Trust gave Marconi Coin to Charles in the following language: "On the settlor's death, the trustee shall distribute to CHARLES W. DUNBAR, the settlor's son, if CHARLES survives the settlor, all of the settlor's interest in that certain business, currently known as MARCONI COIN AND JEWELRY EXCHANGE, or any successor business (the 'Business'), including, without limitation, the Business goodwill, inventory wherever located, Business bank account(s), and all of the settlor's interest in the insurance on the Business. If CHARLES does not survive the settlor, or if the

2

Business has been sold or dissolved prior to the settlor's death, this gift shall lapse. [¶] This gift shall pass subject to any liens and encumbrances, without exoneration."

The Trust designated appellant as the first successor trustee. The Trust separately named Charles as special trustee with respect to Marconi Coin, under the following terms in Section 7.4:

"If the Business (defined in Section 5.3, above) is a trust asset, CHARLES W. DUNBAR shall serve as special trustee with respect to the Business if the settlor is not the trustee. If CHARLES is unable or unwilling to serve as special trustee, the then-acting acting [*sic*] trustee of the trust shall be special trustee. The special trustee has been designated for the sole purpose of exercising the powers of a trustee with respect to the Business. The then-acting successor trustee of the trust shall execute any documents necessary or appropriate to authorize, implement, or ratify actions taken pursuant to this section by the special trustee, as the case may be.

"Net income from the operation of the Business during the life of the settlor not necessary as a reserve for operating or other reasonably foreseeable business expenses, shall be paid to the then-acting successor trustee of the trust and that net income shall be added to the other assets of the trust. On the death of the settlor, the special trustee shall distribute the Business, including any accrued but unpaid net income of the Business, to the person or persons entitled to it pursuant to the other provisions of this trust.

"The purpose of this section is to provide for the continued operation of the Business, or an orderly winding up of its affairs, in the sole discretion of the special trustee. The special trustee shall have the powers to self-deal set forth in section 7.16, below, and the additional power to receive from the Business a reasonable salary and reimbursement of expenses while performing duties as the special trustee.

"If the special trustee sells the Business or ceases operating the Business during the lifetime of the settlor, the special trustee shall distribute the assets of the Business or the net sales proceeds, as the case may be, to the then-acting successor trustee of the trust

3

and those assets or proceeds shall become part of the trust corpus to be held, administered and distributed pursuant to the other provisions of this instrument.

"The special trustee shall have the power to hold and operate the Business on such terms and for such a time as the special trustee, in the special trustee's discretion, deems advisable; to purchase, acquire, invest in, or otherwise participate in, any business or other enterprise on behalf of the trust; or to sell, dissolve, liquidate, or terminate any such business. The trustee shall also have the power to incorporate, reorganize, or otherwise change the form of the Business, through merger or consolidation of two or more enterprises or otherwise, and to participate in that business or enterprise as a sole proprietor, as a general or limited partner, as a shareholder, or in any other capacity. Any operation, sale, purchase, acquisition, investment in, or dissolution or liquidation of the Business, in good faith, shall be at the risk of the trust, and without liability on the part of the special trustee for any resulting losses. The special trustee shall also have the power to contribute capital or loan money to the business or enterprise on such terms and conditions as the special trustee deems advisable."

William died unexpectedly in March 2020, while still serving as trustee. In November 2020, William's sons, Charles and Michael (both Trust beneficiaries), respondents here, filed a petition for instruction to determine the construction of the Trust's special trustee provision and to redress numerous alleged breaches of fiduciary duty by appellant, as successor trustee. Respondents alleged that appellant had emptied and closed various Marconi Coin financial accounts, seized and removed Marconi Coin tangible property from the store's premises, and changed the shop's lock and alarm codes without providing notice or access to Charles.

In December 2020, respondents obtained a preliminary injunction suspending any powers appellant might have with respect to Marconi Coin, granting Charles the sole power to exercise trustee powers regarding Marconi Coin pending resolution of the petition, and ordering appellant to surrender possession of Marconi Coin, including its

4

premises, assets, and accounts, to Charles. The trial court read the relevant Trust provisions as establishing that Charles was the designated special trustee and had the right to trust administration of Marconi Coin and all of its associated assets.

In September 2021, with respondents' petition still pending, appellant filed her own Probate Code section 17200 petition for instruction determining construction of the Trust. Her petition sought an instruction that the Trust's enumerated conditions for appointment of a special trustee under Section 7.4 had not arisen. First, appellant argued that Marconi Coin, as a sole proprietorship, ceased to be a Trust asset upon William's death—although she acknowledged the individual assets constituting the business remained Trust property. Second, she argued that Section 7.4 of the Trust appointed a special trustee for the business only in the event of the settlor's incapacity, an intent she claimed was reflected in letters from the Trust drafting attorney to William.

In January 2022, respondents amended their petition to respond to these arguments and allege further breaches of fiduciary duty by appellant. Among the many exhibits filed in support of the amended petition was a notice that, effective June 7, 2021, Charles was distributing to himself, per Trust Sections 5.3 and 5.1, subdivision (f)(ii), all interest in the Marconi Coin premises and property.

In June 2022, appellant moved to bifurcate and have her petition heard first. She contended that resolution of the special trustee issue would moot a substantial portion of the claims in respondents' petition and related motions. Later that month, appellant filed a motion requesting interpretation of the preliminary injunction and an order directing Charles to provide her with an accounting, among other forms of interim relief. After hearings on both motions, the trial court granted bifurcation to first try appellant's petition and ordered that her motion to interpret the preliminary injunction be heard together with that trial.

The trial court conducted a short bench trial on appellant's petition in December 2022. The documents admitted at trial included the amended Trust instrument

5

executed on August 17, 2011; an August 16, 2011 cover letter from the drafting attorney to William, enclosing a draft amended Trust; an August 17, 2011 cover letter from the same drafting attorney to William, transmitting the executed amended Trust; a copy of the 2008 trust with handwritten annotations; and one page of William's handwritten notes regarding desired amendments to the 2008 trust. The August 16, 2011 cover letter generally described the various additions and changes reflected in the draft amendments. Regarding the special trusteeship, the letter stated: "Margaret will be successor trustee of your trust except that if you are incapacitated, Charles will be the special trustee with power over the business. The special trustee provisions are in Section 7.4." The August 17, 2011 cover letter, in turn, enclosed the fully executed Trust documents and contained a paragraph again summarizing certain changes from the 2008 instrument. The final sentence of that paragraph read: "We also provided that Charles is to be the special trustee with control over the business should you become incapacitated." The annotations on the 2008 trust crossed out William's former spouse as a beneficiary and as successor trustee, along with noting other edits, including "stet" in some places. William's handwritten notes listed instructions to remove his former spouse as a beneficiary and to replace her as successor trustee with appellant. Neither the annotations nor the notes referred to the addition of a special trusteeship. Respondents stipulated to the admission of these exhibits but submitted evidentiary objections to their use for the purpose of establishing William's intent.

After receiving the parties' closing briefs, the trial court issued a written ruling interpreting the Trust in respondents' favor. The court found the relevant Trust provisions unambiguous. It reasoned that Section 7.4's statement that Charles becomes special trustee whenever Marconi Coin is a Trust asset and the settlor " 'is not the trustee' " clearly "reaches *any* instance where 'settlor is not the trustee,' which necessarily include[s] both incapacity and death of the settlor." "By its plain terms, this provision is not limited to circumstances of [the] settlor's incapacity." The court rejected

6

appellant's argument that, because the Marconi Coin sole proprietorship had no existence separate from the settlor, it was no longer a Trust asset upon his death. The court found this argument erroneously conflated the form under which Marconi Coin operates with Marconi Coin as a collection of property and assets as described in Section 5.3, which was to be gifted to Charles no matter the form of the business's operation. Having found no ambiguity in the Trust provisions, the court ruled that the extrinsic evidence offered by appellant was not admissible. The court concluded that the special trust was in effect, with Charles as the designated special trustee empowered to manage all of Marconi Coin's assets.

The trial court additionally determined that this conclusion rendered largely moot appellant's motion for interpretation of the December 2020 preliminary injunction, as the court was now confirming that Charles was special trustee and was entitled to distribute Marconi Coin and its assets to himself as an exercise of his special trustee powers. Finally, the court found that appellant had not established that an accounting by Charles for the special trust assets was required.

Appellant filed a timely notice of appeal.[2]

---

[2]  Because the order appealed from finally determined an issue of construction of the Trust, it is appealable even though it did not dispose of respondents' amended petition. (Code Civ. Proc., § 904.1, subd. (a)(10); Prob. Code, §§ 1304, subd. (a) [making appealable "[a]ny final order under Chapter 3 (commencing with Section 17200) of Part 5 of Division 9," subject to two inapplicable exceptions], 17200, subds. (a), (b)(1) [authorizing proceedings to "[d]etermin[e] questions of construction of a trust instrument"]; *Gridley v. Gridley* (2008) 166 Cal.App.4th 1562, 1587 ["Case law confirms that '[a]n order determining the existence of a power, duty, or right under a trust is appealable' "]; *id.* at p. 1586 [order deciding issue that could be subject of separate appealable probate order is appealable]; see *Young v. Hartford* (2024) 106 Cal.App.5th 730, 735-736 [distinguishing finality in probate court proceedings from finality required for appeal in ordinary civil cases].)

DISCUSSION

The Probate Code authorizes a trustee or beneficiary of a trust to petition the probate court "concerning the internal affairs of the trust," including to determine "questions of construction of a trust instrument." (Prob. Code, § 17200, subds. (a), (b)(1).) " '[T]he primary rule in construction of trusts is that the court must, if possible, ascertain and effectuate the intention of the trustor or settlor.' [Citation.] 'The intention of the transferor as expressed in the [trust] instrument controls the legal effect of the dispositions made in the instrument.' " (*Crook v. Contreras* (2002) 95 Cal.App.4th 1194, 1206.) When construing a will or trust, "[t]he words of an instrument are to receive an interpretation that will give every expression some effect, rather than one that will render any of the expressions inoperative." (Prob. Code, § 21120.) "All parts of an instrument are to be construed in relation to each other and so as, if possible, to form a consistent whole." (Prob. Code, § 21121.)

Where the language of a trust is ambiguous, meaning it is reasonably susceptible to more than one interpretation, extrinsic evidence is admissible to determine the meaning of that language. (Prob. Code, § 21102, subd. (c); see *Estate of Dodge* (1971) 6 Cal.3d 311, 318 ["we may utilize extrinsic evidence to aid in construing the will if we find that the will is 'ambiguous' or, more precisely, that in the light of both the language of the will and the circumstances under which it was made, the will is reasonably susceptible of more than one interpretation"]; *Estate of Russell* (1968) 69 Cal.2d 200, 206 ["When the language of a will is ambiguous or uncertain resort may be had to extrinsic evidence in order to ascertain the intention of the testator," and "extrinsic evidence is admissible 'to explain any ambiguity arising on the face of a will, or to resolve a latent ambiguity which does not so appear' "]; *Ike v. Doolittle* (1998) 61 Cal.App.4th 51, 57, 73 [relying on *Russell* and holding that trial court properly admitted and considered extrinsic evidence to resolve ambiguities in trust]; Prob. Code, § 21101 [same rules of interpretation generally govern wills and trusts].) Extrinsic evidence is not admissible to

give a trust "a meaning to which it is not reasonably susceptible." (*Russell*, at p. 211; *Ike*, at p. 73.) If the trust's terms are unambiguous, the court does not consider extrinsic evidence to determine the settlor's intent. (*Trolan v. Trolan* (2019) 31 Cal.App.5th 939, 949.)

Absent a conflict or question of credibility in the relevant extrinsic evidence, the interpretation of the language of a trust instrument presents a question of law subject to de novo review. (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 604; *Ike v. Doolittle*, *supra*, 61 Cal.App.4th at p. 73.)

Appellant's primary contention on appeal is that, contrary to the trial court's conclusion, the Trust is ambiguous because it is reasonably susceptible to her construction that the special trusteeship under Section 7.4 is triggered only if Marconi Coin was a Trust asset and the settlor (William) ceased to be trustee but was still living. Appellant no longer presses her argument made below that Marconi Coin was not a "trust asset" within the meaning of Section 7.4, and it is undisputed that Charles is the beneficiary of all interest in Marconi Coin. The issue is *how* Charles was meant to receive that interest in the business: as a distribution by the successor trustee (appellant) under Section 5.3 or as a distribution he made himself as special trustee under Section 7.4. Even though Charles has already distributed Marconi Coin to himself, the dispute over this issue remains live because respondents' claim that appellant breached her fiduciary duties in seizing Marconi Coin's premises and assets before the issuance of the preliminary injunction depends on whether she was properly exercising control over the business in her capacity as successor trustee. Appellant contends that Section 7.4 can reasonably be read as creating a special trusteeship only in cases where William became incapacitated or voluntarily resigned as trustee. In light of this ambiguity, she contends, the trial court erred by not considering extrinsic evidence showing William's intent for the special trusteeship. We disagree.

9

The first sentence of Section 7.4 sets forth the conditions for designation of a special trustee for Marconi Coin in simple terms: "If the Business (defined in Section 5.3, above) is a trust asset, CHARLES W. DUNBAR shall serve as special trustee with respect to the Business if the settlor is not the trustee." This sentence does not require the settlor to still be living for the special trusteeship to arise. To the contrary, the language "if the settlor is not the trustee" plainly encompasses any scenario in which the settlor is not the trustee—including the scenario where, as here, he dies while serving as trustee. Moreover, later provisions in Section 7.4 expressly distinguish between the special trustee's powers and duties "[o]n the death of the settlor" and during the settlor's life, confirming that the special trusteeship may arise in both scenarios.

That Section 7.4 was intended to apply in all cases where "the settlor is not the trustee" is reinforced by the Trust's express references to the settlor's incapacity elsewhere in the instrument. For example, Section 4.5 of the Trust instructs the trustee, "[d]uring the settlor's lifetime," to distribute such Trust principal as the settlor may direct in writing; but if the settlor is unable to do so "due to incapacity," such direction may be made on the settlor's behalf by an authorized attorney acting under a valid power of attorney. Section 7.23 similarly requires certain disclosures be made "[i]f the settlor becomes incapacitated." This confirms that, when William intended a provision to apply only upon his incapacity, he said so expressly.

Appellant concedes that the plain language of Section 7.4—"if the settlor is not the trustee"—could be read to apply when the settlor dies while serving as trustee, but she contends the language is ambiguous when read in the context of the Trust as a whole. We are not persuaded.

First, appellant notes that Section 7.4 states that its purpose is "to provide for the continued operation of the Business, or an orderly winding up of its affairs, in the sole discretion of the special trustee." She argues that these purposes would not apply if the settlor died while serving as trustee and that Section 7.4 would conflict with other

10

provisions of the Trust addressing the successor trustee's obligations to pay the debts and expenses of the settlor, because a sole proprietorship like Marconi Coin, in her words, "dies with the sole proprietor." In appellant's view, because the sole proprietorship would cease to exist upon the settlor's death, there would be no need to "wind[] up" the business's affairs, and the debts and expenses of the business would become those of the settlor. While case law confirms that a sole proprietorship is not a legal entity separate from its owner (*Providence Washington Ins. Co. v. Valley Forge Ins. Co.* (1996) 42 Cal.App.4th 1194, 1199-1200), at least one treatise states that continuity can be maintained beyond the original proprietor's death by granting an heir "the authority to continue the business after death so that the heir receives a going concern, rather than the assets of a previously discontinued business." (Callison & Sullivan, Partnership Law & Practice (2025-2026) § 2:1 ["Transferring the business as a going concern permits the heir to continue the business as a new proprietorship without any interruption"].) We read Section 7.4 as just such an effort to authorize the continued operation of Marconi Coin after William's death—whether his death occurred during or after his time as trustee.

Appellant also asserts that construing Section 7.4 to authorize a special trustee to continue Marconi Coin if the settlor dies while serving as trustee would violate Probate Code section 9760, which permits a "personal representative" to continue the operation of a decedent's unincorporated nonpartnership business in certain circumstances. (Prob. Code, § 9760, subd. (b).) As respondents point out, appellant never raised this argument in the trial court. In any event, she fails to establish that section 9760, which appears in a division of the Probate Code governing the administration of estates, either applies to trusts or provides the exclusive means of continuing an unincorporated business after the proprietor's death.

Appellant also discerns ambiguity in Section 7.4 when read in conjunction with Section 5.3. Section 7.4 provides that "[o]n the death of the settlor, *the special trustee*

11

shall distribute the Business . . . to the person or persons entitled to it pursuant to the other provisions of this trust." (Italics added.) Section 5.3, regarding the special gift of Marconi Coin, provides that "[o]n the settlor's death, *the trustee* shall distribute to CHARLES W. DUNBAR, the settlor's son, if CHARLES survives the settlor, all of the settlor's interest" in Marconi Coin. (Italics added.) Appellant contends that, if Section 7.4 is not limited to circumstances where the settlor is not the trustee but is still living, then there is a conflict between these two provisions based on their purported designation of different individuals—"the special trustee" under Section 7.4 and "the trustee" under Section 5.3—to distribute Marconi Coin upon the settlor's death. Interpreting Section 5.3's reference to "the trustee" as a reference to herself, as successor trustee, appellant further argues that if Section 7.4 were to apply whenever the settlor is not the trustee, then there could never be a scenario that would trigger Section 5.3's instruction for the (successor) trustee to distribute the business upon the settlor's death. And this, in turn, would violate Probate Code section 21120's directive to interpret trust language in a way that "will give every expression some effect, rather than one that will render any of the expressions inoperative."

The conflict between Sections 5.3 and 7.4 does not appear to us as stark as appellant suggests. Section 7.4 establishes a "special trustee" for the "sole purpose of exercising the powers of *a trustee* with respect to the Business." (Italics added.) The paragraph enumerating the special trustee's powers refers to the "special trustee" as "[t]he trustee" in at least one place. And in distinguishing the role of the "special trustee" of Marconi Coin, Section 7.4 describes the trustee with power to administer the other trust assets as "the then-acting successor trustee *of the trust*." (Italics added.) These provisions can be read to suggest that the "special trustee" is a sub-category of "trustee," with powers specific to the business. Thus, we are not persuaded that Section 5.3's reference to "the trustee"—without the "of the trust" qualifier—necessarily refers to only

12

the successor trustee of the Trust, as opposed to the general class of trustees, which would include the special trustee.

But even assuming Section 5.3's reference to "the trustee" refers exclusively to the successor trustee and would be rendered inoperative by the unqualified language in Section 7.4's special trustee appointment clause, the extrinsic evidence that appellant put forth at trial, even if considered, would not lead us to a different interpretation of the instrument. That is to say, assuming for the sake of argument that the trial court erred by excluding this evidence for want of an ambiguous trust instrument, the documents cited by appellant do not support her position that the Section 7.4 special trusteeship was intended to be operational only when William was not the trustee for a reason other than his death.

As noted above, appellant primarily relied on four documents in support of her reading of the special trustee provisions: the annotated 2008 trust instrument, William's one page of handwritten notes regarding desired amendments to the 2008 trust, and two cover letters sent from the Trust's drafting attorney to William on the day before and the day of his execution of the amended Trust. As an initial matter, these documents do not contain direct evidence of William's personal intent behind the special trustee provision in new Section 7.4. Appellant acknowledges that neither the annotations on the 2008 trust by an unknown author (the drafting attorney or the attorney's paralegal, she presumes) nor William's notes regarding desired amendments to the 2008 trust refer to a special trusteeship. According to appellant, this implies that "the settlor did not desire or instruct his attorney to add a special trustee provision to the Trust and that the special trustee provision of new Section 7.4 was included solely based on a recommendation of the settlor's drafting attorney." This calls into question the relevance of the extrinsic evidence as a whole because "[i]t is the intention of the trustor, not the trustor's lawyer, which is the focus of [our] inquiry." (*Ike v. Doolittle*, *supra*, 61 Cal.App.4th at p. 73.)

13

Appellant argues that William "ratified" his attorney's intent, reflected in the attorney's letters, by executing the Trust contemporaneously with receiving those letters explaining the addition of the special trusteeship provision. Appellant points to nothing more than speculation, however, that William read, understood, and specifically agreed with both his attorney's purpose behind adding the special trusteeship and the attorney's purported intent for it to arise only in limited circumstances. Her "ratification" argument has even less force with respect to the attorney's second letter, for that letter was written *after* William had executed the amended Trust instrument. We fail to see how his earlier signature could have ratified that letter's contents.

Even taking the letters on their own terms, it is true that they mention only the settlor's incapacity, not his death, as the event triggering Charles's special trusteeship. But they do not purport to be an exhaustive recitation of the conditions that would make Charles the special trustee. Indeed, the first letter directs the reader to the text of Section 7.4 for the complete terms. Neither letter states that "only" William's incapacity and *not* his death would give rise to the special trusteeship. And neither letter makes mention of the express condition that Marconi Coin would still need to be a Trust asset. Moreover, neither letter mentions William's voluntary resignation as trustee, a scenario that appellant now claims would trigger the operation of Section 7.4's special trusteeship. For these reasons, the letters surrounding the Trust's execution, even if they should have been considered, do not support appellant's construction of Section 7.4. And for all the reasons we have discussed, the trial court did not err in construing the Trust as establishing a special trusteeship upon William's death.

Appellant challenges two other conclusions contained in the trial court's construction order. First, in her opening brief, she contends that the court erred in determining that it was no longer necessary to interpret the preliminary injunction because the court's construction order read Section 7.4 consistently with that interim order. In her reply brief, however, she concedes that there is no need to interpret the

14

preliminary injunction, because there is no dispute that Charles is the proper recipient of the Marconi Coin assets and he has since distributed those assets to himself.

Second, appellant contends that the trial court erred by not requiring Charles to provide her with an accounting of the special trust assets. Appellant argues that Charles's refusal to provide such an accounting has obstructed her from fulfilling her duty as William's designated personal representative to file his final personal income tax return. Appellant points us to various duties of the special trustee set forth in the Trust as well as statutes prescribing general obligations of trustees, but she cites no Trust provision specifically obligating the special trustee to provide the trustee of the Trust with an accounting or any case law establishing a duty to do so. Accordingly, she has provided no basis on which to disturb the trial court's decision not to order an accounting.

## DISPOSITION

The order on Margaret Dunbar's petition for instructions is affirmed. Respondents shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


                                                    /s/
                                               FEINBERG, J.


We concur:


       /s/
RENNER, Acting P. J.


       /s/
BOULWARE EURIE, J.

15